208

■ MARK HAYES, Respondent, v CITY OF NEW YORK et al., Defendants, and SKYLINE CRUISE LINE, INC., Appellant. [824 NYS2d 24]—

Order, Supreme Court, Bronx County (Sallie Manzanet, J.), entered on or about July 25, 2005, which, in an action for personal injuries sustained in an assault, denied defendant-appellant's motion for summary judgment dismissing all claims and cross claims against it, reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment in favor of defendant dismissing the complaint and all cross claims as against it.

On July 5, 1997, plaintiff was a passenger on a midnight cruise aboard defendant-appellant's vessel, M/V Skyline Princess, which departed from and returned to Chelsea Piers. During the four-hour cruise two unknown passengers were involved in two separate altercations, the first of which plaintiff personally witnessed. Security personnel aboard the vessel informed the captain about the altercations, who in turn requested police presence upon the vessel's return. According to plaintiff, an unscheduled stop was made at the South Street Seaport but no persons disembarked from the vessel.

Upon the vessel's return to Chelsea Piers about 30 minutes earlier than scheduled, police officers were waiting at the dock. All passengers were permitted to disembark freely. Plaintiff safely disembarked from the vessel with a friend. However, 10 minutes after disembarking, when he was about 30 feet from the vessel, plaintiff was unexpectedly struck in the jaw by one of the individuals who had been involved in the scuffles aboard the vessel. According to plaintiff, the police, who were only 10 feet away from where the incident occurred, did nothing to apprehend the perpetrator or to assist him.

The Extension of Admiralty Jurisdiction Act extends maritime jurisdiction to injuries that occur on land but liability under maritime law can be found only if both the "location"

and "connection with maritime activity" tests are satisfied (*Jerome B. Grubart, Inc. v Great Lakes Dredge & Dock Co.*, 513 US 527, 534 [1995]; *O'Hara v Bayliner*, 89 NY2d 636, 644-645 [1997]). "A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water" (*Grubart*, 513 US at 534). The connection test, on the other hand, requires that the court first determine whether "the general features of the type of incident involved" have "a potentially disruptive impact on maritime commerce," and second, "whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity" (*id.*, quoting *Sisson v Ruby*, 497 US 358, 363-365 [1990] [internal quotation marks omitted]).

Applying these standards to this case, we find that neither test is satisfied. The instant injury occurred on land after plaintiff had disembarked from the vessel. Thus the injury-producing event did not occur on navigable water. Nor was it caused by a vessel on navigable water. The dissent's reliance on cases involving the serving of alcohol on vessels is misplaced since there is no indication here, apart from the fact that alcohol was served during the dinner cruise, that alcohol in any way contributed to either of the two altercations or the assault. Further, the dissent's attempt to analogize drunk driving cases with the instant injury, which was the result of an intentional act directed to one particular person, is unpersuasive. As for the connection test, it is clear that an assault on a pier is not the kind of incident that has a "potentially disruptive impact on maritime commerce" or a "substantial relationship to traditional maritime activity."

Even were we to apply New York law, the result would not change. Appellant's duty of care as a common carrier terminated upon plaintiff's safe disembarkation from the vessel (*see Blye v Manhattan & Bronx Surface Tr. Operating Auth.*, 124 AD2d 106, 109-110 [1987], *affd* 72 NY2d 888 [1988]; *Rodriguez v Manhattan & Bronx Surface Tr. Operating Auth.*, 117 AD2d 541, 543 [1986], *lv denied* 68 NY2d 602 [1986]), at the end of the voyage (*see Sullivan v Ajax Nav. Corp.*, 881 F Supp 906, 908-909 [1995]). In addition to the absence of evidence that what had transpired during the cruise should have put appellant on notice that there was a risk of assault to any of its other 400 passengers (*see Del Bourgo v 138 Sidelines Corp.*, 208 AD2d 795 [1994], *lv dismissed* 85 NY2d 924 [1995]), plaintiff's injuries occurred at a substantial distance and time away from the vessel in an area leased and controlled by nonparty Chelsea Piers

LP while plaintiff was moving at his own pace and under his own control (*see Taft v Connell*, 285 AD2d 992 [2001], *lv denied* 97 NY2d 604 [2001]). Concur—Andrias, J.P., Friedman, Catterson and Malone, JJ.

Marlow, J., dissents in a memorandum as follows: Even though plaintiff, a passenger on appellant boat owner's "midnight cruise," was assaulted on dry land about 10 minutes after disembarking and about 30 feet from the boat, the motion court properly applied maritime law. Appellant's alleged negligence, namely, a failure to take reasonable security measures in response to rowdiness aboard the boat during the cruise, occurred on navigable waters (*see e.g. Bay Casino, LLC v M/V Royal Empress*, 199 FRD 464, 466 [ED NY 1999]). Under maritime law, appellant's duty to protect plaintiff's safety did not necessarily end at the gangplank (*see Sullivan v Ajax Nav. Corp.*, 881 F Supp 906, 909 [SD NY 1995]). Indeed, pursuant to the terms of the Extension of Admiralty Jurisdiction Act "[t]he admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land" (46 USC Appendix § 740; *see also Duluth Superior Excursions, Inc. v Makela*, 623 F2d 1251 [8th Cir 1980]).

I respectfully disagree with the majority's conclusion that neither the connection nor location tests was satisfied here, both of which are required to invoke maritime jurisdiction. Indeed, the motion court found that maritime jurisdiction applies, appellant argues that both the connection and location tests are satisfied, and plaintiff does not claim otherwise.

With respect to the connection prong, "[c]arrying passengers for hire is undoubtedly a traditional maritime activity, and suits in tort for personal injuries to passengers are clearly included in admiralty jurisdiction" (*Duluth* at 1253; *see also Sinclair v Soniform, Inc.*, 935 F2d 599 [3d Cir 1991] [transport and care of passengers bear substantial relationship to maritime activity]; *Butler v American Trawler Co., Inc.*, 887 F2d 20 [1st Cir 1989] [duties owed by vessel owners to their passengers have long been found to be traditional maritime concern]; *Bay Casino*, 199 FRD 464 [1999], *supra* [alcohol-related injury to third person by passenger on gambling cruise may well have disruptive effect on maritime commerce; torts aboard entertainment vessels, including cruise ships, sightseeing ships, and casino boats satisfy the traditional maritime activity requirement]). The fact that appellant's vessel was engaged in recreational rather than commercial purposes does not alter its maritime

character (see *Foremost Ins. Co. v Richardson*, 457 US 668, 674-676 [1982]).

The location prong addresses the issue of the place where the tort occurred. Courts have applied the Extension of Admiralty Jurisdiction Act to confer admiralty jurisdiction on land-based accidents that were proximately caused by serving alcohol on the vessel. In *Duluth*, the court applied admiralty jurisdiction to a case involving two passengers who had just disembarked from a "booze and cruise" around the Duluth-Superior harbor. After disembarking, one of the passengers, who was allegedly intoxicated, entered his car and struck another passenger as he crossed the street near the boat. Even though the accident occurred on dry land, the court applied admiralty jurisdiction pursuant to the Extension of Admiralty Jurisdiction Act because of the sequence of causal events that started on the vessel and ended on land, to wit, service of liquor on the cruise leading to the intoxication that contributed to the accident. The accident was not remote in time or place as it occurred just six minutes after the vessel docked on a street adjoining the dock. Similarly, in *Bay Casino*, federal maritime law applied to a negligence claim against the owner of a gambling cruise ship by occupants of a car who were injured in an automobile accident while driving along a Florida highway when they were struck by a vehicle driven by an underage person who had earlier become intoxicated while a passenger on the cruise (see also *Young v Players Lake Charles, L.L.C.*, 47 F Supp 2d 832 [SD Tex 1999]; *Thier v Lykes Bros., Inc.*, 900 F Supp 864 [SD Tex 1995]; *Horak v Argosy Gaming Co.*, 648 NW2d 137 [Sup Ct Iowa 2002]). Here, the onland injury was not so remote in time (10 minutes) and place (30 feet from the vessel) from the alleged onboard negligence so as to distinguish it from these and other cases where courts have applied admiralty jurisdiction.

Under those circumstances where maritime law applies, a shipowner owes a duty of exercising reasonable care toward persons lawfully on the boat who are not crew members (see *Kermarec v Compagnie Generale Transatlantique*, 358 US 625, 630 [1959]; cf. *Monteleone v Bahama Cruise Line, Inc.*, 838 F2d 63 [2d Cir 1988]). It is uncontradicted in the record that a second fight broke out on the boat before it made an unscheduled stop, as plaintiff testified at his deposition. The reasonableness of appellant's conduct, e.g., whether it should have disembarked the rowdy passengers in the middle of the cruise when the boat made an unscheduled stop or whether the crew should have called for police assistance during that stop, are triable issues of fact (see *Mastroianni v County of Suffolk*, 91 NY2d

198, 205-206 [1997]; *S & S Mach. Corp. v Manufacturers Hanover Trust Co.*, 219 AD2d 249, 254 [1996]). Accordingly, I would affirm the order denying appellant's motion for summary judgment dismissing all claims and cross claims asserted against it.