■ JAMES MULHERN et al., Plaintiffs, v MANHASSET BAY YACHT CLUB, Defendant and Third-Party Plaintiff-Respondent. COSTELLO MARINE CONTRACTING CORP., Third-Party Defendant-Appellant. [840 NYS2d 821]—

In an action, inter alia, to recover damages for personal injuries, etc., the third-party defendant appeals from a judgment of the Supreme Court, Queens County (Spires, J.), dated November 29, 2005, which after, inter alia, a hearing and upon an order of the same court dated July 11, 2005 is in favor of the third-party plaintiff on its implied indemnification claim and against it in the principal sum of $2,023,599.54.

Ordered that on the Court's own motion, the notice of appeal from the order is deemed to be a premature notice of appeal from the judgment (*see* CPLR 5520 [c]); and it is further,

Ordered that the judgment is reversed, on the law, with costs, the order dated July 11, 2005 is vacated, and the third-party complaint is dismissed.

The injured plaintiff was clearing debris from a beach when he was struck by a load of timber being hoisted by a barge-

mounted crane. At the time of the accident, the injured plaintiff was employed by the third-party defendant, Costello Marine Contracting Corp. (hereinafter Costello), which had been hired by the defendant third-party plaintiff, Manhasset Bay Yacht Club (hereinafter Manhasset), to perform work on a waterfront renovation project which included the construction of new piers. The injured plaintiff and his wife subsequently commenced this action against Manhasset to recover damages for personal injuries, etc., based, inter alia, upon a violation of Labor Law § 241 (6), and Manhasset commenced a third-party action against Costello for indemnification and contribution. The third-party action sought indemnification from Costello on the theory that Costello had breached the warranty of workmanlike performance implied in maritime service contracts. The injured plaintiff also instituted a direct action to recover damages against Costello predicated, among other things, upon violation of the Jones Act (46 USC Appendix § 688), and the actions were joined for trial.

During the ensuing liability trial, the Supreme Court instructed the jury that, as a matter of law, there was a maritime services contract between Manhasset and Costello, and that a warranty of workmanlike performance was implied in every such contract. At the conclusion of the liability trial, the jury returned a verdict finding that the violation of several Industrial Code provisions relating to the safe operation of mobile cranes had been a substantial factor in causing the accident, and Manhasset was held liable to the plaintiffs pursuant to Labor Law § 241 (6) based upon these violations. The jury also found that the violation of the subject Industrial Code provisions constituted a breach of the warranty of workmanlike performance implied in maritime contracts, and on this basis the court awarded judgment in favor of Manhasset on its third-party claim for indemnification. Costello was also found liable to the injured plaintiff in the separate Jones Act action. Both Manhasset and Costello moved to set aside the verdict, and their motions were denied. Shortly thereafter, Manhasset reached a settlement agreement with the plaintiffs on the issue of damages. An interlocutory judgment in favor of the plaintiffs and against Manhasset on the issue of liability, and in favor of Manhasset and against Costello on its third-party cause of action for indemnification, was subsequently entered.

Under the circumstances of this case, we reject Manhasset's contention that the issue of indemnification is not before this Court.

The implied right to contractual indemnification upon which

Manhasset prevailed in its third-party action grew out of the relationship between shipowners, stevedoring companies, and the longshoremen who are employed by such companies. In 1946 the United States Supreme Court held that longshoremen who were injured by a dangerous or defective condition aboard a vessel on which they were working could recover from the vessel's owner on the theory that the owner had breached its implied warranty of the seaworthiness of the ship (*see Seas Shipping Co. v Sieracki*, 328 US 85, 99-102 [1946]; *Lubrano v Waterman S.S. Co.*, 175 F3d 274 [1999], *cert denied sub nom. Waterman S.S. Co. v Weeks Mar., Inc.*, 528 US 933 [1999]). Under the seaworthiness doctrine, a shipowner has an absolute, nondelegable duty to provide a seaworthy ship, and is strictly liable for the breach of this duty (*see Knight v Alaska Trawl Fisheries, Inc.*, 154 F3d 1042, 1044 [1998]). The United States Supreme Court subsequently held that the Longshore and Harbor Workers' Compensation Act (33 USC § 901 *et seq.*; hereinafter the LHWCA) precluded shipowners who had been held strictly liable to an injured longshoreman under the seaworthiness doctrine from obtaining contribution from the stevedoring company which employed the worker (*see Halcyon Lines v Haenn Ship Ceiling & Refitting Corp.*, 342 US 282 [1952]). These holdings placed shipowners in an "unenviable position" because "[a] longshoreman might be injured as a result of an unseaworthy condition caused wholly by the stevedore's negligence, and yet the shipowner, wholly without fault, could be held liable for the entire amount of compensatory damages" (*Fairmont Shipping Corp. v Chevron Intl. Oil Co., Inc.*, 511 F2d 1252, 1255 [1975], *cert denied* 423 US 838 [1975]).

In the landmark case of *Ryan Stevedoring Co. v Pan-Atlantic S. S. Corp.* (350 US 124 [1956]), the United States Supreme Court fashioned a rule under which stevedores could be held accountable for their own negligence. In *Ryan*, the Supreme Court implied a warranty of workmanlike performance into every contract between a stevedore and a shipowner, holding that a stevedore who contracts with a shipowner implicitly promises to perform its services completely and safely (*see Ryan Stevedoring Co. v Pan-Atlantic S. S. Corp.*, *supra* at 130-131; *Lubrano v Waterman S.S. Co.*, *supra* at 275). The Supreme Court also read the contract between the shipowner and stevedore to give the shipowner an implied right of indemnification against the stevedore for damages sustained as a result of a breach of this implied warranty (*Ryan*, *supra* at 130; *see Lubrano v Waterman S.S. Co.*, *supra* at 275).

In 1972 Congress amended the LHWCA by adding section 905

(b), which abolishes an injured longshoreman's right to recover against a shipowner under the strict liability theory of seaworthiness, and the stevedore-employer's corresponding obligation to indemnify the shipowner (*see Marcinowski v McCormack Boys Corp.*, 160 F Supp 2d 708 [2001]; *Matthews v United States*, 150 F Supp 2d 406 [2001]). However, it has been recognized that the 1972 amendments do not necessarily bar a non-shipowner from seeking *Ryan* indemnity from an employing stevedore or maritime contractor for breach of an implied warranty of workmanlike performance (*see Lubrano v Waterman S.S. Co., supra; Zapico v Bucyrus-Erie Co.*, 579 F2d 714, 721-722 [1978]; *see also Olsen v James Miller Mar. Serv., Inc.*, 16 AD3d 169 [2005]; *Hartley v City of New York*, 228 AD2d 646 [1996]; *Pennisi v Standard Fruit & S.S. Co.*, 206 AD2d 290 [1994]).

Although *Ryan* indemnity may be available to non-shipowners, Manhasset nevertheless has no right to prevail on an implied indemnification theory under federal maritime law unless its contract with Costello can be properly classified as one for maritime services. Generally, a contract is considered to be maritime in nature, and subject to admiralty jurisdiction, when its principal objective is related to maritime commerce (*see Norfolk Southern R. Co. v James N. Kirby, Pty Ltd.*, 543 US 14, 23 [2004]; *Exxon Corp. v Central Gulf Lines, Inc.*, 500 US 603, 608 [1991]). A maritime contract has also been defined as one "relating to a ship in its use as such, or to commerce or navigation on navigable waters, or to transportation by sea or maritime employment" (*J.A.R., Inc. v M/V Lady Lucille*, 963 F2d 96, 98 [1992] [internal quotation marks omitted]; *BDL Intl. v Sodetal USA, Inc.*, 377 F Supp 2d 518 [2005]). Here, Manhasset failed to demonstrate that the subject waterfront improvement contract bore any relation to maritime commerce. Moreover, there is no evidence that the subject contract related to a ship, navigation on navigable waters, or transportation by sea. Under these circumstances, the trial court erred in determining that the subject contract was one for maritime services which includes an implied warranty of workmanlike performance and may serve as the basis for implied contractual indemnification under maritime law. In the absence of such an implied right to contractual indemnification, the third-party complaint should have been dismissed.

In view of our determination that implied contractual indemnification is not available to Manhasset under federal maritime law, we do not reach Costello's remaining contentions.

Motion by the defendant third-party plaintiff-respondent on an appeal from a judgment of the Supreme Court, Queens

County, dated November 29, 2005, to strike the appendix and brief of the defendant third-party plaintiff-appellant on the ground that they contain or refer to matter dehors the record. By decision and order on motion of this Court dated June 19, 2006, the motion was referred to the panel of Justices hearing the appeal for determination upon the argument or submission thereof.

Upon the papers filed in support of the motion and the papers filed in opposition thereto, and upon the argument of the appeal, it is

Ordered that the motion is denied. Schmidt, J.P., Spolzino, Krausman and Balkin, JJ., concur.