SHEPHERD, J.
 

 In these consolidated maritime personal injury actions, we must determine whether the trial court erred by enforcing a forum-selection clause in form contracts issued by Carnival Cruise Lines to Kathryn Barry and Thomas Leslie, two of its fare-paying customers, prior to embarking
 
 *562
 
 on their respective Carnival cruises.
 
 [1]
 
 The clause, which undoubtedly appears in nearly all commercial passage contracts currently issued by Carnival to its fare-paying customers, directs that passenger law suits arising out of a passenger’s cruise be filed exclusively in the United States District Court for the Southern District of Florida. The express language of the clause, found in Paragraph Fifteen of the Ticket Contract, reads:
 

 It is agreed by and between Guest and Carnival that all disputes and matters arising under, in connection with or incident to this Contract or the Guest’s cruise, including travel to and from the vessel, shall be litigated, if at all, before the United States District Court for the Southern District of Florida in Miami, or as to those lawsuits to which the Federal Courts of the United States lack subject matter jurisdiction, before a court located in Miami-Dade County, Florida, U.S.A. to the exclusion of the Courts of any other county, state or country![
 
 2
 
 ]
 

 Barry and Leslie are Florida residents who wish to use the courts of their own state for the resolution of negligence actions they brought against Carnival for shipboard injuries incurred during their cruises. Because of a one-year limitation period on the filing of cruise-related claims also present in Barry’s and Leslie’s ticket contracts, each provisionally filed identical actions in the United States District Court for the Southern District of Florida.
 
 [3]
 
 Due to a lack of diversity jurisdiction between them and Carnival, these actions are pending on the admiralty side of that court.
 

 Barry’s and Leslie’s chief grievance regarding Carnival’s forum-selection clause is that it strips them of their constitutional right to a jury trial, and instead affords them a jury trial in their federal forum only “with the consent of both parties.”
 
 See
 
 Fed.R.Civ.P. 39(c).
 
 [4]
 
 Carnival represents in its Answer Brief here that it “has no intention of opposing Appellants!!’] request for a jury trial” in these passengers’ pending federal actions, which Barry and Leslie suggest is further evidence of what it divines to be Carnival legerdemain. We interpret Carnival’s statement to mean that if the United States District Court lifts the stays in these passengers’ federal admiralty actions, Carnival will consent to a jury trial in these cases. We conclude
 
 *563
 
 Carnival’s forum-selection clause is enforceable.
 

 I. Carnival’s Forum-Selection Clause is Prima Facie Valid and Enforceable
 

 It is well settled that federal maritime law governs the enforceability of a forum-selection clause in a passenger cruise ticket contract.
 
 See Carnival Cruise Lines, Inc. v. Shute,
 
 499 U.S. 585, 590, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991);
 
 Fletcher v. Port Marine Ctr., Inc.,
 
 No. 89-0974-N, slip op. at 1, 1990 WL 255536 (D.Mass. Aug. 7, 1990);
 
 see also Milanovich v. Costa Crociere, S.p.A.,
 
 954 F.2d 763, 766 (D.C.Cir.1992) (stating that a cruise ticket is a maritime contract and the law to be applied is general federal maritime law);
 
 Vavoules v. Kloster
 
 Cruise,
 
 Ltd.,
 
 822 F.Supp. 979, 982 (E.D.N.Y.1993);
 
 Mack v. Royal Caribbean Cruises, Ltd.,
 
 361 Ill.App.3d 856, 297 Ill.Dec. 593, 838 N.E.2d 80, 85 (2005).
 

 In
 
 M/S Bremen v. Zapata Off-Shore Co.,
 
 407 U.S. 1, 12, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)
 
 (The
 
 Bremen), the Supreme Court held that forum-selection clauses are prima facie valid and enforceable under the general maritime law. In so holding, the Supreme Court was mindful that ocean-going vessels travel through many jurisdictions, thus potentially becoming subject to the laws of a particular jurisdiction based solely upon a fortuitous event of an accident. The Supreme Court reasoned that “[t]he elimination of all such uncertainties by agreeing in advance on a forum acceptable to both parties is an indispensable element in international trade, commerce, and contracting.”
 
 Id.
 
 at 13-14, 92 S.Ct. 1907. To overcome the presumption that the forum-selection clause is enforceable, the Supreme Court held the party challenging the clause must make a “strong showing” that the clause is unreasonable.
 
 Id.
 
 at 15, 92 S.Ct. 1907.
 

 In
 
 Shute,
 
 499 U.S. at 593, 111 S.Ct. 1522 the United States Supreme Court further “refine[d] the analysis of
 
 The Bremen
 
 to account for the realities of form passage contracts.” (emphasis added). In
 
 Shute,
 
 Eulala Shute, a resident of Washington State, suffered a shipboard injury off the coast of Mexico on a Carnival cruise she boarded in Los Angeles, California.
 
 Id.
 
 at 588, 111 S.Ct. 1522. Upon her return home, Shute filed suit in the United States District Court for the Western District of Washington. A forum-selection clause in her contract of passage, a predecessor clause to the one before us, required that “all disputes ... arising under, in connection with or incident to this Contract shall be litigated, if at all, in and before a Court located in the State of Florida, U.S.A., to the exclusion of the Courts of any other state or country.”
 
 Id.
 
 at 587-88, 111 S.Ct. 1522. The Supreme Court held that a forum-selection clause in a form passenger cruise ticket contract, which was not subject to individual negotiation, nonetheless was enforceable and fundamentally fair. The
 
 Shute
 
 Court reasoned as follows:
 

 First, a cruise line has a special interest in limiting the fora in which it potentially could be subject to suit. Because a cruise ship typically carries passengers from many locales, it is not unlikely that a mishap on a cruise could subject the cruise line to litigation in several different fora. Additionally, a clause establishing
 
 ex ante
 
 the forum for dispute resolution has the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be devoted to deciding those motions. Finally, it stands to reason that
 
 *564
 
 passengers who purchase tickets containing a forum clause like that at issue in this case benefit in the form of reduced fares reflecting the savings that the cruise line enjoys by limiting the fora in which it may be sued.
 

 Id.
 
 at 593-94, 111 S.Ct. 1522 (citations omitted). Although the reasoning in
 
 Shute
 
 is not dispositive of this case, we nevertheless are of the view that if a contractual provision requiring one of Carnival’s Washington State passengers to travel to Florida to litigate her shipboard personal injury claim is valid, then,
 
 a fortiori,
 
 it is not contractually unreasonable for Carnival to require Barry and Leslie to travel from the Miami-Dade County Circuit Court to the United States District Court for the Southern District of Florida to present their personal injury claims against Carnival in this case. In this regard, we note we have not been unduly disturbed by trial court enforcement of the identical forum-selection clause in earlier cases that have come before this Court.
 
 See Assiff v. Carnival Corp.,
 
 930 So.2d 776, 778 (Fla. 3d DCA 2006) (affirming trial court order that declined to “transfer” to United States District Court an action that had been dismissed under identical forum-selection clause);
 
 Carnival Corp. v. Middleton,
 
 941 So.2d 421, 423 (Fla. 3d DCA 2006) (issuing writ of prohibition quashing order of trial court, which had “re-instated” a personal injury action that previously had been dismissed on the basis of identical forum-selection clause).
 

 II. Carnival Has Not Unlawfully “Federalized” Its Passenger Personal Injury Actions
 

 Despite our conclusion, Barry and Leslie make a final, intriguing argument — glaringly ignored by Carnival — that neither
 
 The Bremen
 
 nor
 
 Shute
 
 afford meaningful guidance in this case, because both cases treated “geographical” forum-selection clauses as distinguished from the clause under consideration here, which Barry and Leslie aptly characterize as a “sovereign selection clause.” These passengers point out that, in substantial contrast to a “geographical” forum-selection clause, Carnival’s new forum-selection clause effectively dictates not only the location where a passenger may sue, but also contractually constrains the “subject matter jurisdiction” of the available courts within that jurisdiction. According to Barry and Leslie, this constraint arises from the fact that, henceforth, all of Carnival’s Florida resident passengers and its alien passengers (who all lack diversity of citizenship with Carnival)
 
 [5]
 
 , and all its passengers whose claims are worth less than $75,000 (the federal diversity jurisdictional minimum), must initiate suits against Carnival on the admiralty side of the United States District Court for the Southern District of Florida, and, at the same time, all other United States citizens (for whom diversity does exist) henceforth must file on the law side of that court.
 

 For this reason, Appellants’ counsel contends, Carnival’s forum-selection “creation, for proprietary use with its own particular passengers” operates henceforth both: (1) to deprive its maritime passengers of their “ ‘historic option’ and right under the Savings to Suitors Clause of 28 U.S.C. [Section] 1331(Z) to initiate their suits in state court and to remain there unless and until properly removed by Carnival to federal
 
 *565
 
 district court on diversity grounds”; and (2) to disrupt the participation of this state’s “trial and appellate courts as an otherwise indispensable, co-equal [an]d counter-poising source (with federal courts) of national maritime common law,” contrary to the rich history of interactive relations between the states and the federal government in the field, which has existed since the United States Congress in the Judiciary Act of 1789, resolved to “save to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it.” Judiciary Act of 1789, Ch. 20, § 9, 1 Stat. 76 (codified as amended at 28 U.S.C. § 1333(1) (2000));
 
 Romero v. Int’l Terminal Operating,
 
 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959),
 
 superseded by statute on other grounds,
 
 45 U.S.C. § 59,
 
 as recognized in Miles v. Apex Marine Corp.,
 
 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990);
 
 see also Lewis v. Lewis & Clark Marine, Inc.,
 
 531 U.S. 438, 445, 121 S.Ct. 993, 148 L.Ed.2d 931 (2001) (noting that the Savings to Suitors Clause originally was “inserted, probably, from abundant caution, lest the exclusive terms in which the power is conferred on the District Courts might be deemed to have taken away the concurrent remedy which had before existed” (quoting
 
 N.J. Steam Navigation Co. v. Merchants’ Bank of Boston,
 
 47 U.S.(6 How.) 344, 390, 12 L.Ed. 465 (1848)));
 
 see generally
 
 Michael D. Eriksen,
 
 U.S. Maritime Public Policy versus Ad-Hoc Federal Forum Provisions in Cruise Tickets,
 
 80 Fla. B.J. 21 (2006).
 

 We acknowledge the disruption to traditional maritime policy caused by Carnival’s new forum-selection clause. We also are mindful that until relatively recently, forum-selection clauses, including those found in admiralty and maritime contracts, have not been favored by American courts.
 
 See The Bremen,
 
 407 U.S. at 9, 92 S.Ct. 1907. As fully explained in
 
 The Bremen,
 
 in earlier times, “[m]any courts, federal and state, have declined to enforce such clauses on the ground they were ‘contrary to public policy,’ or that their effect was to ‘oust the jurisdiction’ of the court.”
 
 Id.; see also id.
 
 at n. 10, 92 S.Ct. 1907. Thus, in former times, the outcome of this case might have been different. Today, however, we find persuasive the more recent critique by the United States Supreme Court of that earlier view, also appearing in
 
 The Bremen:
 

 The argument that such clauses are improper because they tend to “oust” a court of jurisdiction is hardly more than a vestigial legal fiction. It appears to rest at core on historical judicial resistance to any attempt to reduce the power and business of a particular court and has little place in an era when all courts are overloaded and when businesses once essentially local now operate in world markets. It reflects something of a provincial attitude regarding the fairness of other tribunals.
 

 Id.
 
 at 12, 92 S.Ct. 1907.
 

 Although our participation in maritime personal injury claims might be lessened by the adoption of clauses of this type, we doubt we will be silenced completely as Barry, Leslie, and their counsel so eloquently urge. Nor do we harbor jurisdictional or sovereign concern. Rather, we concur with the sentiment expressed in
 
 The Bremen, id.,
 
 that “[it] reflects something of a provincial attitude regarding the fairness of other tribunals[]” to suggest, as the passengers and their counsel do in the final analysis here, that plaintiffs who might become contractually obligated to appear before and litigate their cases before the fine judges of the United States
 
 *566
 
 District Court for the Southern District of Florida somehow will be short-changed.
 

 Affirmed.
 

 [1]
 

 . These cases arrive here upon final orders of dismissal from separate complaints filed by Barry and-Leslie. We review these dismissals de novo.
 
 D'Angelo v. Fitzmaurice,
 
 863 So.2d 311, 314 (Fla.2003);
 
 Lopez-Infante v. Union Cent. Life Ins. Co.,
 
 809 So.2d 13, 14 (Fla. 3d DCA 2002).
 

 [2]
 

 . The passengers do not contest that this clause, which was referenced expressly in a bold-faced “Important Notice to Guests” on the first page of the Ticket Contract, was "reasonably communicated” to them as required by federal maritime law.
 
 See Nash v. Kloster Cruise, A/S,
 
 901 F.2d 1565, 1567 (11th Cir.1990);
 
 Marek v. Marpan Two, Inc.,
 
 817 F.2d 242, 247 (3d Cir.1987);
 
 Carnival Corp. v. Middleton,
 
 941 So.2d 421, 423-24 (Fla. 3d DCA 2006) (observing that the United States District Court in a companion federal proceeding "found ... that the ticket reasonably communicated the contractual Iimita-tions[ ]”).
 

 [3]
 

 . These cases have been stayed by the United States District Court pending resolution of the forum-selection clause issue presented here.
 

 [4]
 

 . Federal Rule of Civil Procedure 39(c) states:
 

 In all actions not triable of right by a juiy the court upon motion or of its own initiative may try any issue with an advisory jury or, except in actions against the United States when a statute of the United States provides for trial without a jury, the court, with the consent of both parties, may order a trial with a jury whose verdict has the same effect as if trial by jury had been a matter of right.
 

 [5]
 

 .
 
 See Universal Licensing Corp. v. Paola del Lungo S.p.A.,
 
 293 F.3d 579, 580 (2d Cir.2002) (stating that diversity is lacking where parties on both sides are aliens, even if one is a corporation with principal place of business in the United States);
 
 accord Chick Kam Choo v. Exxon Corp.,
 
 764 F.2d 1148, 1152 (5th Cir.1985). Carnival is a foreign corporation with its principal place of business in Miami-Dade County, Florida.